STATE of Iowa, Appellee,

v.

Omar Rasheen WILKINS a/k/a Michael Lamar Carter, Appellant.

No. 03–0598.

Supreme Court of Iowa.

March 11, 2005.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kristin Guddall, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Drew Bockenstedt and Mark A. Campbell, Assistant County Attorneys, for appellee.

CARTER, Justice.

Defendant, Omar Rasheen Wilkins, appeals from his conviction of first-degree murder. He contends that his challenge to a prospective juror for cause was improperly denied and that the prosecuting attorney engaged in misconduct that prejudiced his right to a fair trial. He requests that additional claims based on newly discovered evidence be preserved for postconviction relief. The State urges that defendant's appeal should be dismissed as a sanction for his escape from custody after he had been imprisoned as a result of his conviction.

After reviewing the record and considering the arguments presented, we conclude that defendant's appeal should be considered on the merits. We find that he has shown no prejudice from the court's denial of his challenge to a juror and that the prosecutor's conduct, although clearly subject to criticism, was not such as would likely affect the jury's verdict. The record is insufficient to determine defendant's claim based on newly discovered evidence. We affirm the judgment of the district court, but preserve defendant's claim based on newly discovered evidence for consideration in a claim for postconviction relief.

The evidence at trial viewed most favorably toward the State revealed the following facts. On July 3, 2002, Myree Coleman drove David Hayes to 1510 Jones Street in Sioux City in order that Hayes might purchase crack cocaine from the defendant who resided at that address. A transaction was concluded, and Coleman and Hayes returned to Hayes' residence. In the early morning hours of July 4, 2002, Hayes contacted Coleman and requested that he again be transported to 1510 Jones Street in order to purchase more crack cocaine from defendant.

When Coleman and Hayes arrived at defendant's residence, defendant and Wayne Edwards came out of the house to meet them. Hayes removed a wad of money from his pocket and began negotiating with defendant as to price. While this was going on, three men left the porch of a house on the other side of the street and proceeded to the area where Coleman and Hayes were talking. One of these men, Ezzard Woods, announced that it was his turn to make a sale. At this point, Hayes, feeling uncomfortable with the situation, repocketed his money and attempted to get back in Coleman's van. Before he was able to do so, he was punched,

knocked to the ground, and kicked by defendant, Edwards, Woods, and Alton Burden. At some point, Woods declared that Hayes was not going to leave with the money. As the assault against Hayes continued, he was told by his assailants that, if he left the money, he was free to go.

Woods, at some time, went back across the street to the residence from which he had come and obtained an assault rifle. He returned to the area where Hayes was being assaulted and attempted to shoot Hayes. The gun, which apparently had the safety on, did not fire. Defendant then took the weapon from Woods and struck Hayes under the chin with the butt of the weapon. He then took the safety off and shot and killed Hayes. Defendant later stated "I shot the hell out of him."

The foregoing events were described at the trial by Coleman, and most of the details were confirmed by the testimony of Woods, Edwards, and Burden. Another witness named Michael Daniels indicated that it was Woods who shot Hayes rather than defendant.[1] Other facts will be considered in our discussion of the legal issues presented.

## I. *The State's Motion to Dismiss.*

■ The State has moved to dismiss the appeal on the ground that defendant escaped while confined in the Iowa Medical Classification Facility following his conviction. It appears that he ultimately turned himself in to authorities in another state and is presently serving a life sentence in an Iowa prison. Although the State cites authorities that, under the circumstances presented, would warrant dismissal of de-

fendant's appeal as a sanction for his disregard of our system of law that is the foundation for seeking an appeal, we elect to hear the appeal on the merits.

We considered a similar situation in *State v. Byrd*, 448 N.W.2d 29, 30–31 (Iowa 1989), and made the same decision. We noted in *Byrd* that there is no statute or rule that calls for the dismissal of a properly perfected appeal in the event of an escape. *Byrd*, 448 N.W.2d at 31. As in the present case, the defendant in *Byrd* was back in custody prior to the time that the appeal was to be considered by this court. The facts there were perhaps more egregious than in the present case because the defendant had not voluntarily surrendered to authorities. As in *Byrd* we find no persuasive reason to dismiss the appeal in the present case.

## II. *The Denial of Defendant's Challenge to a Potential Juror.*

■ One of the prospective jurors who was questioned at the beginning of the trial was a law enforcement officer employed by the Department of Transportation. His job was to investigate and initiate charges with respect to overweight vehicle violations. He had worked with some of the assistant county attorneys in the county where defendant's case was being prosecuted. At the time of trial, there were overweight charges that he had initiated pending in Woodbury County.

This juror, when questioned, indicated that he would have no problem being fair and impartial, but defendant challenged him for cause. The district court denied the challenge. Ultimately, the juror was

---

1. This conflict in the evidence is not significant for two reasons. First, the jury was entitled to believe the testimony of those witnesses who contended that defendant shot Hayes. Second, defendant was convicted of first-degree murder based on a theory of felo-

ny murder in which he engaged in joint criminal conduct with Woods and others while participating in a robbery of Hayes. In any event, the sufficiency of the evidence has not been made an issue on appeal.

removed by the exercise of one of defendant's peremptory challenges.

■ Defendant argues that the juror's connection with the Woodbury County Attorney's Office was both substantial and continuing, a circumstance that rendered him sufficiently conflicted that he should not have been allowed to sit on the jury. We are asked in connection with our consideration of that contention to abandon the legal proposition established in *State v. Neuendorf*, 509 N.W.2d 743, 747 (Iowa 1994), that the use of a peremptory challenge to remove an allegedly prejudiced juror from the array negates any prejudice that might otherwise arise from a denial of a challenge for cause. Defendant argues that both challenges for cause and peremptory challenges are important arrows in counsel's trial arsenal, and neither should be compromised.

Defendant quotes from a Montana case as follows:

The purpose of voir dire in a criminal proceeding is to determine the existence of a prospective juror's partiality, that is, his or her bias and prejudice. This enables counsel to intelligently exercise their peremptory challenges.... When jurors who should have been removed for cause are not removed and must, therefore, be removed by peremptory challenge, the party wrongfully denied the challenge for cause effectively loses [that] to which he is entitled by law.

*State v. Herrman*, 316 Mont. 198, 204–05, 70 P.3d 738, 742–43 (2003) (citations omitted).

■ The position taken by the Montana court is similar to the law that existed in this state for many years. However, as we observed in *Neuendorf*, 509 N.W.2d at 747, it differs from the current law in many jurisdictions. We further recognized in *Neuendorf* that the Supreme Court in *Ross v. Oklahoma*, 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80, 88 (1988), had determined that when the impartiality of a juror is questioned the focus should be limited to those jurors who actually served in the case. We have no inclination to retreat from our declaration in *Neuendorf* that

[t]he partiality of a juror may not be made the basis for reversal in instances in which that juror has been removed through exercise of a peremptory challenge. Any claim that the jury that did serve in the case was not impartial must be based on matters that appear of record. Prejudice will no longer be presumed from the fact that the defendant has been forced to waste a peremptory challenge.

*Neuendorf*, 509 N.W.2d at 747. Viewed in this light, there is nothing in the record on which to question the impartiality of the jury that heard defendant's case.

### III. *Alleged Prosecutorial Misconduct.*

■ Defendant asserts that the assistant county attorney who prosecuted the case engaged in misconduct by continuing throughout the trial to refer to defendant as "O.J." Because no objection to this practice was made at trial, the claim is premised on an assertion that defendant received ineffective assistance based on trial counsel's failure to make such objection.

It was established through the testimony of witnesses that O.J. was defendant's nickname. His own counsel even succumbed to referring to him in that manner on one occasion during the trial. Nevertheless, we agree with defendant's claim that the prosecutor's persistent use of this name when referring to defendant was both unnecessary and unprofessional. The prosecutor made it a point to tell the jury in his opening statement that defendant's

nickname was "O.J.," although that fact was in no way material to any issue in the case. Throughout the trial, he referred to defendant as O.J. more than a dozen times and continued to call him by that name in making his closing argument to the jury.

The American Bar Association standards for criminal justice in referring to the function of a prosecutor state: "It is the duty of the prosecutor to know and be guided by the standards of professional conduct as defined by applicable professional traditions, ethical codes, and law in the prosecutor's jurisdiction." ABA Standards for Criminal Justice 3–1.2(e) (3d ed. 1993). In keeping with that requirement, Ethical Consideration 1–5 accompanying Disciplinary Rule 1–101 of the Iowa Rules of Professional Responsibility for Lawyers states that a lawyer should be temperate and dignified. We are satisfied that, in order for a lawyer to proceed in a dignified manner, they should not attempt to disparage the dignity of other participants in the trial process. Witnesses and parties, including criminal defendants, should be called by their proper names.

Defendant contends that the prosecutor's references to "O.J." were calculated to link defendant in the minds of the jurors with O.J. Simpson, a perceived pariah in matters of homicide. Although we are unable to know with certainty whether that was the prosecutor's motive, his actions clearly suggest that he was using this form of reference to disparage defendant in front of the jury.

█ We are unable to conclude that the failure of defendant's trial counsel to object to the county attorney's actions produced a level of prejudice that would warrant the granting of a new trial. Prosecutorial misconduct does not in every instance prejudice the defendant to the extent of warranting a reversal of a conviction. We have said that "it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial." *State v. Piper*, 663 N.W.2d 894, 913 (Iowa 2003). In determining whether there is sufficient prejudice to warrant the granting of relief from a conviction, we must consider not only the severity and pervasiveness of the misconduct but also the significance of the misconduct with respect to the central issues in the case. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

Notwithstanding our disapproval of the prosecutor's conduct, we do not believe that it warrants a reversal of defendant's conviction. We are unwilling to conclude that the jurors either individually or collectively would have been so neglectful of their responsibility that the prosecutor's references to defendant's nickname would sway their verdict in favor of the prosecution. We are confident that the jurors decided the case in keeping with the instructions of the court and based on the rather substantial testimony presented concerning the shooting of David Hayes.

## IV. *Newly Discovered Evidence.*

Defendant has presented an affidavit of a former county jail prisoner who purports to have heard some of the witnesses against defendant concoct a conspiracy to convict him. All of this was beyond the record at defendant's trial. Defendant asks that his claim for new trial based on newly discovered evidence be preserved for postconviction relief. We agree that he may present this challenge to his conviction in a postconviction proceeding. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**