# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-0799

_____

FILED

June 5, 2013

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

V.

TIMOTHY RAY SUTHERLAND,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Kanawha County
Honorable James C. Stucky, Judge
Criminal Action No. 10-F-328

AFFIRMED

_____

Submitted: April 9, 2013
Filed: June 5, 2013

Jason D. Parmer                              Patrick Morrissey
Kanawha County Public Defender's Office      Attorney General
Charleston, West Virginia                    Laura Young, Assistant Attorney General
Attorney for Petitioner                      Charleston, West Virginia
                                             Attorney for Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

# SYLLABUS BY THE COURT

1. "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syllabus point 5, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996).

2. "When a prospective juror makes a clear statement of bias during voir dire, the prospective juror is automatically disqualified and must be removed from the jury panel for cause. However, when a juror makes an inconclusive or vague statement that only indicates the possibility of bias or prejudice, the prospective juror must be questioned further by the trial court and/or counsel to determine if actual bias or prejudice exists. Likewise, an initial response by a prospective juror to a broad or general question during voir dire will not, in and of itself, be sufficient to determine whether a bias or prejudice exists. In such a situation, further inquiry by the trial court is required. Nonetheless, the trial court should exercise caution that such further voir dire questions to a prospective juror should be couched in neutral language intended to elicit the prospective juror's true feelings, beliefs, and thoughts—and not in language that suggests a specific response, or otherwise seeks to rehabilitate the juror. Thereafter, the totality of the circumstances must be considered, and where there is a probability of bias the prospective juror must be removed from the panel by the trial court for cause." Syllabus point 8, *State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d

i

675 (2009).

3.     A trial court's failure to remove a biased juror from a jury panel, as required by W. Va. Code § 62-3-3 (1949) (Repl. Vol. 2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

**Davis, Justice:**

This is an appeal by Timothy Ray Sutherland (hereinafter "Mr. Sutherland")

ii

from his conviction for first degree murder. Mr. Sutherland was sentenced by the Circuit Court of Kanawha County to life in prison without the possibility of parole. In this appeal, Mr. Sutherland argues that the circuit court committed error by failing to strike a prospective juror for cause.[1] After a careful review of the parties' briefs, the record submitted on appeal, and listening to the arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Mr. Sutherland was living temporarily at the home of his cousin, Stacie Smith, in St. Albans, West Virginia. In the early morning hours of December 28, 2009, Mr. Sutherland got into an argument with Ms. Smith in her bedroom. The argument involved a comment made by Mr. Sutherland that Ms. Smith's boyfriend did not treat her properly. During the argument, Ms. Smith called Mr. Sutherland a "junkie". Mr. Sutherland became outraged at being called a drug addict and left the bedroom. He then went into the kitchen and smoked a cigarette. Within a few minutes, he returned to the bedroom carrying a butcher knife. Mr. Sutherland fatally stabbed Ms. Smith on the right side of her neck as

---

[1]Although Mr. Sutherland only briefed one assignment of error, his Notice of Appeal listed three assignments of error. Insofar as Mr. Sutherland has briefed only one issue in this appeal, the remaining two issues assigned in the Notice of Appeal are deemed waived. *See State v. Harris*, 226 W. Va. 471, 472 n.1, 702 S.E.2d 603, 604 n.1 (2010) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.") (internal quotations and citation omitted)).

she laid on the bed.[2]  Before fleeing the scene of the murder, Mr. Sutherland took Ms. Smith's cell phone, credit card, money, and car keys.  He also wrote the words "Cheating Whore" on a living room wall in the house.[3]

The police arrested Mr. Sutherland in an abandoned trailer on December 30, 2009.  The police initially arrested Mr. Sutherland on an outstanding warrant for failing to register as a sex offender.[4]  Subsequent to his arrest, Mr. Sutherland confessed to killing Ms. Smith.  In April 2010, a grand jury indicted Mr. Sutherland on charges of first degree murder and first degree robbery.  After a three-day trial in March 2011, a jury returned a verdict convicting Mr. Sutherland of first degree murder, without a recommendation of mercy; the jury acquitted Mr. Sutherland of first degree robbery.[5]

## II.

### STANDARD OF REVIEW

We are asked to review the trial court's decision not to strike a potential juror

---

[2]At the time of the stabbing, Ms. Smith's infant son was in the home, but he was in his bedroom.  Ms. Smith also had a daughter who had spent the night at a friend's home.  The record does not indicate the age of either child.

[3]It was later determined that Mr. Sutherland wrote the words on the wall to make the police suspect that Ms. Smith's boyfriend had committed the crime.

[4]At the time of the arrest, the police did not have sufficient evidence to charge Mr. Sutherland with the murder of Ms. Smith.  However, he was a "person of interest" in the murder.

[5]Other facts, as they relate to the assignment of error, will be addressed in Section III, *infra*.

2

for cause.  We have articulated the standard of review of this issue as follows:

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process.  Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

*State v. Miller*, 197 W. Va. 588, 600–01, 476 S.E.2d 535, 547–48 (1996).  *See* Syl. pt. 2,

*State v. Mayle*, 178 W. Va. 26, 357 S.E.2d 219 (1987).  In Syllabus point 4 of *Miller*, the

Court further held:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant.  Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

197 W. Va. 588, 476 S.E.2d 535.  With these standards in mind, we turn to the issue

presented as an assignment of error.

## III.

## DISCUSSION

This case presents two issues for resolution.  First, we must determine whether

the trial court should have granted Mr. Sutherland's motion to strike a prospective juror for

3

cause. Second, we take this opportunity to revisit our decision in *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995), which permits a new trial whenever a criminal defendant uses a peremptory strike to remove a prospective juror that should have been struck for cause. We examine each issue separately.

### A. Failing to Strike a Prospective Juror for Cause

Mr. Sutherland contends that a prospective juror was biased and that the trial court should have granted his motion to strike the juror for cause. This Court has held:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

Syl. pt. 4, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996). We also have recognized that "[a]ctual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." Syl. pt. 5, *Miller*, *id.*

In this proceeding, Mr. Sutherland argues that the trial judge should have struck a prospective juror for cause based upon the following voir dire exchange:

> [Defense Counsel:] Okay. Thank you. Part of the evidence that all of you–some of you will see in this case is a video of Mr. Sutherland confessing that he took Stacie Smith's

4

life. So, as jurors, you won't really be deciding whether Mr. Sutherland is guilty or innocent. Instead, what you'll be deciding on is exactly what crime Mr. Sutherland is guilty of. . . . If you find him guilty of first degree murder, you also have to decide whether or not to grant Mr. Sutherland mercy.

Granting Mr. Sutherland mercy means that 15 years from now the Parole Board will take a look at his case; they'll hear from the victim's friends and relatives, people who were impacted by this crime; and then the Parole Board will decide whether or not Mr. Sutherland ever gets to leave prison, and if he leaves prison, he'll be on supervised parole.

Granting mercy is not a guarantee that he'll ever leave prison provided that you find him guilty of first degree murder, but mercy does mean that that option is available to him.

. . . .

[Defense Counsel:] Thank you, judge. After telling you-all that, my first question for you is: Does anyone think if you intentionally murder someone, you should never leave prison?

(WHEREUPON, Potential Juror Number 178, Mr. Kevin Wong raised his hand.)

[Defense Counsel:] Mr. Wong. Is there anyone else that thinks if you intentionally murder someone, you should never leave prison?

(WHEREUPON, there was no response by the potential jurors.)

[Defense Counsel:] Mr. Wong, so, if you found Mr. Sutherland guilty of first degree murder, you could not recommend mercy?

[Mr. Wong:] No, I just feel if somebody takes a life, and since you don't have the death penalty here in West Virginia, that's where he ought to stay.

5

. . . .

> [Defense Counsel:] Is there anyone here who agrees with the saying, "An eye for an eye and a tooth for a tooth?"
>
> (WHEREUPON, Potential Juror Number 178, Mr. Kevin Wong raised his hand.)
>
> [Defense Counsel:] Mr. Wong. Is there anyone here who's heard of the saying, "An eye for an eye only makes the whole world blind?"
>
> (WHEREUPON, there was no response by the potential jurors.)

Mr. Sutherland contends that the above exchange *required* the trial court to strike Mr. Wong from the jury panel. In support of this contention, Mr. Sutherland relies primarily upon the decision in *State v. Greer*, 22 W. Va. 800 (1883).

The defendant in *Greer* was charged with first degree murder, which, at that time, was punishable by death.[6] However, the jury convicted him of second degree murder, and he was sentenced to prison for ten years. One of the issues the defendant raised on appeal was that the trial court committed error in striking, for cause, a potential juror who had "conscientious scruples" against imposing the death penalty. The opinion in *Greer* set out the facts on the issue as follows:

> The *second* bill of exceptions was to the ruling of the court sustaining the challenge to W. S. Duff, who was sworn on

---

[6]"In 1965, the death penalty in West Virginia was abolished by the legislature." *Vance v. Holland*, 177 W. Va. 607, 608, 355 S.E.2d 396, 397 (1987).

his *voir dire*, having been regularly drawn as a juror. The question was propounded by the court "whether he had any conscientious scruples against inflicting the death penalty in a proper case?" To which, answer was made, that "he had conscientious scruples against inflicting the death penalty; that he would be governed by the law and evidence, but was opposed to inflicting capital punishment." . . . "Whereupon said proposed juror was rejected by the court for that reason alone and no other, against the objection of the prisoner.

22 W. Va. at 809. Ultimately, the Court in *Greer* found that the trial court did not abuse its discretion in striking the potential juror for cause. The opinion set out its holding on the issue in Syllabus points 5 and 6 as follows:

5. In empaneling a jury in a capital case a proposed juror examined on his *voir dire*, who in answer to a question propounded by the court says, he has conscientious scruples against inflicting the death-penalty, is incompetent and is properly rejected by the court, although he says he will be governed by the law and the evidence.

6. Since our statute gives a jury a discretion, when they find a prisoner guilty of murder in the first degree, to say he shall be punished by imprisonment in the penitentiary, it is more important to the State, that juries should have no conscientious scruples against inflicting the death penalty.

*Greer*, 22 W. Va. 800.

Although we find *Greer* instructive, we do not find it controlling. In fact, *Greer* has been implicitly modified by our evolving law on striking a potential juror for cause, as illustrated in Syllabus point 8 of *State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d

7

675 (2009):

> When a prospective juror makes a clear statement of bias during voir dire, the prospective juror is automatically disqualified and must be removed from the jury panel for cause. However, when a juror makes an inconclusive or vague statement that only indicates the possibility of bias or prejudice, the prospective juror must be questioned further by the trial court and/or counsel to determine if actual bias or prejudice exists. Likewise, an initial response by a prospective juror to a broad or general question during voir dire will not, in and of itself, be sufficient to determine whether a bias or prejudice exists. In such a situation, further inquiry by the trial court is required. Nonetheless, the trial court should exercise caution that such further voir dire questions to a prospective juror should be couched in neutral language intended to elicit the prospective juror's true feelings, beliefs, and thoughts—and not in language that suggests a specific response, or otherwise seeks to rehabilitate the juror. Thereafter, the totality of the circumstances must be considered, and where there is a probability of bias the prospective juror must be removed from the panel by the trial court for cause.

Assuming, for the sake of argument, that West Virginia had retained the death penalty, *Greer's* automatic disqualification of a potential juror could occur only if the potential juror has made a "clear statement of bias," as required by *Newcomb*. In other words, *Newcomb* does not require a potential juror be automatically disqualified for making a biased statement if the statement is inconclusive or vague. *See* Syl. pt. 4, *O'Dell v. Miller*, 211 W. Va. 285, 565 S.E.2d 407 (2002). It is this exception in *Newcomb* that has modified any general application of *Greer* on the issue of bias.

In the instant proceeding, Mr. Sutherland argues that Mr. Wong made a clear

statement of bias. Therefore, Mr. Sutherland contends, Mr. Wong should have been disqualified. We disagree.

Mr. Wong responded in a general manner to the question of whether a person should ever leave prison for committing intentional murder. Rather than following up with further questions, as required under *Newcomb*, defense counsel stopped questioning Mr. Wong on the issue of mercy. Under the decision in *Newcomb,* defense counsel had an obligation to ask further questions in order to place into the record Mr. Wong's response to being able to follow the law on the issue of mercy as directed by the trial judge with regard thereto. A case which illustrates this point is *State v. Juntilla*, 227 W. Va. 492, 711 S.E.2d 562 (2011).

In *Juntilla*, the defendant was convicted by a jury of first degree murder, sexual assault in the first degree, and conspiracy to commit sexual assault. One of the issues raised by the defendant on appeal was that the circuit court erred in denying his motion to strike a prospective juror, David Smallwood, for cause. The opinion set out the argument as follows:

> Specifically, the Appellant argues in his brief that the potential juror was "predisposed to make a recommendation of no mercy verdict." The Appellant contends that the juror stated that it would be "unlikely that I would feel any mercy but I would have to, you know, I would have to hear the case through." The juror also said that he is a strong proponent of the death penalty and believes that West Virginia should adopt it as a sentence. Because the circuit court refused to grant the Appellant's motion, he was forced to use a peremptory strike to eliminate the

juror. In contrast, the Appellee maintains that Juror Smallwood indicated that he favored a state law permitting the death penalty, but he acknowledged that West Virginia does not have the death penalty, that he could grant mercy and that he would have to listen to the facts of the case before making a decision.

*Juntilla*, 227 W. Va. at 499, 711 S.E.2d at 569. Based upon the above facts, this Court found that the trial judge did not abuse his discretion in denying the motion to strike the potential juror for cause:

A review of the record reveals that Juror Smallwood told the circuit court that it was his belief that West Virginia should have a death penalty. When questioned further about West Virginia not having the death penalty and whether, in light of that, Juror Smallwood could recommend mercy, the juror responded:

I have to, you know, hear the case. I don't know if I could stand here and give that decision at this very time but it would probably be unlikely that I would feel any mercy but I would have to, you know, I would have to hear the case through.

Based upon an examination of the entire voir dire of Juror Smallwood, the Court finds that the circuit court did not err in denying the Appellant's motion to strike the juror for cause.

*Juntilla*, 227 W. Va. at 499-500, 711 S.E.2d at 569-70.

*Juntilla* is instructive in showing that, when a potential juror in a first degree murder case makes a general statement of not being predisposed to granting mercy, further questioning should occur to ascertain the juror's willingness to impartially decide the issue based upon the law and the facts of the case presented. Here, defense counsel failed to make further inquiry of Mr. Wong as to whether he would follow the trial court's instructions and

10

decide the issue of mercy based upon the facts of the case.  *See* Syl. pt. 6, in part, *Miller*, 197

W. Va. 588, 476 S.E.2d 535.  ("The challenging party bears the burden of persuading the trial

court that the juror is partial and subject to being excused for caused[.]").  Consequently, the

trial court did not abuse its discretion in denying Mr. Sutherland's motion to strike Mr. Wong

for cause.

### B.  Using a Peremptory Strike to Remove a Juror Who Should Have Been Removed for Cause

Assuming, for the sake of argument, that the trial court erred in not striking Mr.

Wong for cause, Mr. Sutherland further contends that he was automatically entitled to a new

trial under Syllabus point 8 of *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995),[7]

because he was required to remove Mr. Wong from the jury panel with a peremptory strike.

While we understand Mr. Sutherland's reliance on Syllabus point 8 of *Phillips*, we believe

it is time to revisit the automatic new trial remedy recognized in that Syllabus point.  As will

be explained below, the automatic new trial remedy allowed by Syllabus point 8 of *Phillips*

is not expressly authorized by the statute it relied upon, nor is it required by the state or

federal constitution.

The defendant in *State v. Phillips* was convicted of second degree murder for

killing his wife.  On appeal, one of the issues raised by the defendant was that the trial court

---

[7]*Phillips* was a 4-1 decision, with Justice Workman dissenting.

committed error in failing to strike two jurors for cause. Even though the defendant struck both jurors with peremptory strikes, he argued that he was entitled to a new trial because he was guaranteed a jury panel of unbiased prospective jurors, when he exercised his peremptory strikes, under (1) the state and federal constitutions and (2) W. Va. Code § 62-3-3 (1949) (Repl. Vol. 2010). The constitutional and statutory issues addressed by *Phillips* will be examined separately.

**1. No right to an automatic new trial under the state or federal constitutions without a showing of prejudice.** The defendant in *Phillips* contended that he was entitled to a new trial without a showing of prejudice because "the presence of the two biased jurors on the jury panel denied his right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution and Section 14 of Article III of the West Virginia Constitution." *Phillips*, 194 W. Va. at 586, 461 S.E.2d at 92. This Court rejected the argument after determining that, in *Ross v. Oklahoma*, 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988), the United States Supreme Court expressly held that "'[s]o long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.'" *Phillips*, 194 W. Va. at 586, 461 S.E.2d at 92 (quoting *Ross*, 487 U.S. at 88, 108 S. Ct. at 2278, 101 L.Ed.2d 80).[8] As a consequence of the decision in *Ross*, we held in Syllabus point

---

[8]*Ross* involved a state court prosecution in which the defendant invoked the
(continued...)

7 of *Phillips*:

> A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice.

194 W. Va. 569, 461 S.E.2d 75.

Under *Phillips*, the mere presence of a biased juror on a jury panel does not establish a violation of the state or federal constitutional right to an impartial jury. *Phillips* requires a defendant to show prejudice from the juror's presence on the jury panel. More importantly, under *Phillips* prejudice cannot be established merely because a defendant exercised a peremptory strike to remove the juror from the jury panel.

**2. No right to an automatic new trial under W. Va. Code § 62-3-3 without a showing of prejudice.** The decision in *Phillips* followed *Ross* in holding that a defendant must show prejudice when alleging a constitutional violation for having to use a peremptory strike to remove a biased juror. However, *Phillips* reached a different conclusion under W. Va. Code § 62-3-3. This statute provides, in relevant part:

> In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of the accused. If a sufficient

---

[8](...continued)
federal constitution as a basis for reversal.

13

number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, *free from exception*, be completed, from which panel the accused may strike off six jurors and the prosecuting attorney may strike off two jurors.[9]

W. Va. Code § 62-3-3 (emphasis and footnote added).

The defendant in *Phillips* argued that "because [he] was required to use two of his peremptory challenges on the two allegedly disqualified jurors, he was denied his statutory right to six peremptory challenges." *Phillips*, 194 W. Va. at 586, 461 S.E.2d at 92. In response to the issue raised, the *Phillips* court correctly found that the phrase "free from exception" found in W. Va. Code § 62-3-3 required a jury panel be unbiased before a defendant used his or her peremptory strikes. The court's remedy for a violation of the

---

[9]The statute reads in full as follows:

In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, free from exception, be completed, from which panel the accused may strike off six jurors and the prosecuting attorney may strike off two jurors. The prosecuting attorney shall first strike off two jurors, and then the accused six. If the accused failed to strike from such panel the number of jurors this section allows him to strike, the number not stricken off by him shall be stricken off by the prosecuting attorney, so as to reduce the panel to twelve, who shall compose the jury for the trial of the case.

W. Va. Code § 62-3-3 (1949) (  ).

statute was set out in Syllabus point 8 of *Phillips* as follows:

> The language of W. Va. Code, 62-3-3 (1949), grants a
> defendant the specific right to reserve his or her peremptory
> challenges until an unbiased jury panel is assembled.
> Consequently, if a defendant validly challenges a prospective
> juror for cause and the trial court fails to remove the juror,
> reversible error results even if a defendant subsequently uses his
> peremptory challenge to correct the trial court's error.

Syl. pt. 8, *Phillips*, 194 W. Va. 569, 461 S.E.2d 75.


The holding in Syllabus point 8 of *Phillips*, that a violation of W. Va. Code

§ 62-3-3 requires automatic reversal, has no express or implicit support in the statute.[10]

Clearly, the statute is silent on a remedy for a violation of its requirements. We do not

believe that *Phillips'* extreme remedy of an automatic new trial, without a showing of

prejudice, is warranted. Although we fully understand that the doctrine of stare decisis is a

guide for maintaining stability in the law, we will part ways with precedent that is not legally

sound. In syllabus point 2 of *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169

(1974), we held that "[a]n appellate court should not overrule a previous decision . . . without

evidence of changing conditions or serious judicial error in interpretation sufficient to compel

deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty,

---

[10]Although *Phillips* set out the remedy in Syllabus point 8, prior decisions of
this Court also recognized the remedy of automatic reversal without a showing of prejudice.
*See State v. Wilcox*, 169 W. Va. 142, 144, 286 S.E.2d 257, 259 (1982) ("[I]t is reversible
error to deny a valid challenge for cause even if the disqualified juror is later struck by a
[peremptory] challenge.").

15

stability, and uniformity in the law." Of course, "when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted." *Woodrum v. Johnson*, 210 W. Va. 762, 766 n.8, 559 S.E.2d 908, 912 n.8 (2001) (internal quotations and citations omitted).

We believe that the automatic reversal required under Syllabus point 8 of *Phillips* is legally unsound and is not dictated by W. Va. Code § 62-3-3. The better and more legally sound approach is to require a showing of prejudice, as is required by the overwhelming majority of states.[11] The prejudice approach is illustrated by the United States

---

[11]A majority of courts require a defendant to establish prejudice when a peremptory strike is used to remove a juror who should have been struck for cause. *See Pace v. State*, 904 So. 2d 331, 341 (Ala. Crim. App. 2003); *Minch v. State*, 934 P.2d 764, 770 (Alaska Ct. App. 1997); *State v. Kuhs*, 224 P.3d 192, 198 (Ariz. 2010); *Miles v. State*, 85 S.W.3d 907, 911 (Ark. 2002); *People v. Whalen*, 294 P.3d 915, 951 (Cal. 2013); *State v. Ross*, 849 A.2d 648, 669-70 (Conn. 2004); *Holmes v. State*, 422 A.2d 338, 341 (Del. 1980), *superseded by statute on other grounds as stated in Burke v. State*, 484 A. 2d 490 (Del. 1984)); *Johnson v. United States*, 804 A.2d 297, 304 (D.C. Cir. 2002); *Street v. State*, 592 So. 2d 369, 370 (Fla. Dist. Ct. App. 1992); *State v. Iuli*, 65 P.3d 143, 152 (Haw. 2003); *Stoddard v. Nelson*, 581 P.2d 339, 343 (Idaho 1978); *People v. Bowens*, 943 N.E.2d 1249, 1259 (Ill. App. Ct. 2011); *Whiting v. State*, 969 N.E.2d 24, 30 (Ind. 2012); *State v. Wilkins*, 693 N.W.2d 348, 351 (Iowa 2005); *State v. Broyles*, 36 P.3d 259, 272 (Kan. 2001); *Ware v. State*, 759 A.2d 764, 771 (Md. 2000); *Commonwealth v. Mendes*, 806 N.E.2d 393, 408 (Mass. 2004); *People v. Holliday*, 376 N.W.2d 154, 162 (Mich. Ct. App. 1985); *State v. Prtine*, 784 N.W.2d 303, 311 (Minn. 2010); *Mettetal v. State*, 615 So. 2d 600, 603 (Miss. 1993); *State v. Jamison*, 365 S.W.3d 623, 627 (Mo. Ct. App. 2012); *State v. Daly*, 775 N.W.2d 47, 70 (Neb. 2009); *Jitnan v. Oliver*, 254 P.3d 623, 630 (Nev. 2011); *State v. DiFrisco*, 645 A.2d 734, 751 (N.J. 1994); *State v. Isiah*, 781 P.2d 293, 302 (N.M. 1989), *overruled on other grounds by, State v. Lucero*, 863 P.2d 1071, 1074 (N.M. 1993); *State v.*

(continued...)

16

Supreme Court decision of *United States v. Martinez-Salazar*, 528 U.S. 304, 120 S. Ct. 774, 145 L.Ed.2d 792 (2000).

The decision in *Martinez-Salazar* called upon the Supreme Court to address the issue of an automatic right to a new trial in federal court when a biased juror is removed from a jury panel with a peremptory strike by a criminal defendant. The defendant in *Martinez-Salazar* was prosecuted by the federal government on various drug trafficking and weapons charges.[12] During jury voir dire, a prospective juror indicated that he would favor the prosecution. The defendant asked the trial court to strike the prospective juror for cause. The trial judge denied the motion to strike for cause. The defendant used a peremptory strike

---

[11](...continued)
*Clemmons*, 639 S.E.2d 110, 112 (N.C. Ct. App. 2007); *State v. Entzi*, 615 N.W.2d 145, 149 (N.D. 2000); *State v. Hale*, 892 N.E.2d 864, 888 (Ohio 2008); *Harmon v. State*, 248 P.3d 918, 932 (Okla. Crim. App. 2011); *State v. Berliner*, 222 P.3d 744, 746 (Or. Ct. App. 2009); *Commonwealth v. Chambers*, 685 A.2d 96, 107 (Pa. 1996); *State v. Barnville*, 445 A.2d 298, 301 (R.I. 1982); *State v. Green*, 392 S.E.2d 157, 160 (S.C. 1990); *State v. Daniel*, 606 N.W.2d 532, 535 (S.D. 2000); *State v. Schmeiderer*, 319 S.W.3d 607, 633 (Tenn. 2010); *Busby v. State*, 253 S.W.3d 661, 670 (Tex. Crim. App. 2008); *State v. Menzies*, 889 P.2d 393, 400 (Utah 1994); *Lattrell v. Swain*, 239 A.2d 195, 198 (Vt. 1968); *State v. Fire*, 34 P.3d 1218, 1225 (Wash. 2001); *State v. Lindell*, 629 N.W.2d 223, 245-46 (Wis. 2001). *But see Ma v. People*, 121 P.3d 205, 210 (Colo. 2005) (automatic reversal without showing prejudice); *Harris v. State*, 339 S.E.2d 712, 714 (Ga. 1986) (same); *Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky. 2007) (same); *State v. Jacobs*, 789 So. 2d 1280, 1284 (La. 2001); *State v. Good*, 43 P.3d 948, 960 (Mont. 2002) (same); *People v. Weber*, 959 N.Y.S.2d 736, 737 (N.Y. App. Div. 2013) (same); *Townsend v. Commonwealth*, 619 S.E.2d 71, 73 (Va. 2005) (same); *Patterson v. State*, 691 P.2d 253, 256 (Wyo. 1984) (same). Two states appear not to have squarely addressed the issue: Maine and New Hampshire.

[12]The defendant and a co-defendant were tried together.

to remove the juror. The defendant ultimately was convicted of all charges by the jury. On appeal to the Ninth Circuit Court of Appeals the defendant argued that he was entitled to a new trial, without a showing of prejudice, because the trial court committed error in denying his motion to strike the juror for cause. The Ninth Circuit agreed and granted the defendant a new trial. The Ninth Circuit took the position that, under Rule 24(b) of the Federal Rules of Criminal Procedure, the defendant had a right to exercise his peremptory strikes on a panel of unbiased jurors. Consequently, the Ninth Circuit held that the defendant's due process right under the Fifth Amendment was violated because he had had to use one of his peremptory strikes to cure an error by the trial court. The Supreme Court granted the government's appeal.

The Supreme Court's opinion in *Martinez-Salazar* indicated initially that the government conceded that the juror should have been struck for cause. However, the government took the position that a defendant should be required "to use a peremptory challenge to strike a juror who should have been removed for cause[.]" *Martinez-Salazar*, 528 U.S. at 314, 120 S. Ct. at 781, 145 L. Ed. 2d 792. The Supreme Court disagreed with the government and held that a defendant does not have to use a peremptory strike to remove a biased juror from the jury panel. However, the opinion also held that when a defendant does use a peremptory strike to remove a biased juror, the defendant must show prejudice to obtain a new trial. The opinion addressed the issues as follows:

> We reject the Government's contention that under federal

18

law, a defendant is obliged to use a peremptory challenge to cure the judge's error. We hold, however, that if the defendant elects to cure such an error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right.

. . . .

The Court of Appeals erred in concluding that the District Court's for-cause mistake compelled Martinez-Salazar to challenge [the juror] peremptorily, thereby reducing his allotment of peremptory challenges by one. A hard choice is not the same as no choice. . . .

After objecting to the District Court's denial of his for-cause challenge, Martinez-Salazar had the option of letting [the juror] sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal. Instead, Martinez-Salazar elected to use a challenge to remove [the juror] because he did not want [the juror] to sit on his jury. This was Martinez-Salazar's choice. The District Court did not demand– and Rule 24(b) did not require--that Martinez-Salazar use a peremptory challenge curatively.

In choosing to remove [the juror] rather than taking his chances on appeal, Martinez-Salazar did not lose a peremptory challenge. Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury. . . .

In conclusion, we note what this case does not involve. It is not asserted that the trial court deliberately misapplied the law in order to force the defendants to use a peremptory challenge to correct the court's error. Accordingly, no question is presented here whether such an error would warrant reversal. Nor did the District Court's ruling result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal.

We . . . hold that a defendant's exercise of peremptory

challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez-Salazar and his codefendant were accorded 11 peremptory challenges, the exact number Rule 24(b) and (c) allowed in this case. Martinez-Salazar received precisely what federal law provided; he cannot tenably assert any violation of his Fifth Amendment right to due process.

*Martinez-Salazar*, 528 U.S. at 307-16, 120 S.Ct. at 777-82, 145 L. Ed. 2d 792 (citations omitted).

The decision in *Martinez-Salazar* followed *Ross*, which was a state prosecution, in holding that the constitution is not violated when a defendant in a federal prosecution uses a peremptory strike to remove a biased juror. More importantly, *Martinez-Salazar* also made clear that merely because a defendant has a rule-based right to exercise peremptory strikes on an unbiased jury panel does not mean that he or she is entitled to a new trial for using a peremptory strike to remove a biased juror from the panel. The latter holding by *Martinez-Salazar* supports this Court's decision to overrule Syllabus point 8 of *Phillips*.

The defendants in both *Phillips* and *Martinez-Salazar* argued that they had a right to exercise all of their peremptory strikes on a panel of unbiased jurors. The Courts in both cases agreed with the defendants–*Phillips* found the right existed in a statute, and *Martinez-Salazar* found the right existed in a rule. However, the Courts differed on the

20

remedy when a violation occurred–*Phillips* provided for automatic reversal while *Martinez-Salazar* required a showing of prejudice. Clearly, *Martinez-Salazar* is the better approach because it recognizes that when a defendant has been tried before an unbiased jury, he or she has received exactly what the constitution guarantees. Consequently, a defendant should be required to show prejudice resulting from the selection of an unbiased juror. To hold otherwise results in an unjustifiable waste of judicial time and resources.

Thus, we now hold that a trial court's failure to remove a biased juror from a jury panel, as required by W. Va. Code § 62-3-3 (1949) (Repl. Vol. 2010), does not violate a criminal defendant's right to a trial by an impartial jury, if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

Our decision to revisit and overrule *Phillips* and join the vast majority of courts in the country that require a showing of prejudice when a defendant uses a peremptory strike to remove a biased juror is not without precedent. This Court previously has revisited and overruled precedent that afforded a defendant relief without showing prejudice. For example, this Court held in *State v. Vance*, 146 W. Va. 925, 124 S.E.2d 252 (1962), that a violation of W. Va. Code § 62-3-2 (1923) (Repl. Vol. 2010), requiring a defendant be present

21

during a trial, required an automatic reversal. In *Vance,* the defendant's conviction for statutory rape and his sentence of life in the penitentiary were reversed as a result of the defendant voluntarily being absent for four or five minutes during a discussion of jury instructions. *Vance* was later disapproved by this Court in *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975). We held in Syllabus point 6 of *Blair* that,

> [i]nsofar as the decisions of *State v. Vance*, 146 W. Va. 925, 124 S.E.2d 252 (1962)[,] and its progenitors held that prejudice is not a necessary element for reversal of a felony conviction where the defendant was absent during a trial occurrence in which anything was done affecting him, such cases are disapproved.

158 W. Va. 647, 214 S.E.2d 330.

Similarly, in *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988), this Court held that it was reversible error for a trial court to fail to inform a defendant of his or her constitutional right to testify. In *State v. Salmons*, 203 W. Va. 561, 509 S.E.2d 842 (1998), this Court determined that an automatic reversal for a *Neuman* violation was not legally sound. Consequently, we held the following in Syllabus point 15 of *Salmons*:

> A violation of *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988), is subject to a harmless error analysis. A rebuttable presumption exists that a defendant represented by legal counsel has been informed of the constitutional right to testify. When a defendant is represented by legal counsel, a *Neuman* violation is harmless error in the absence of evidence that a defendant's legal counsel failed to inform him/[her] of the right to testify, or that the defendant was coerced or misled into giving up the right to testify. When a defendant represents him/[her]self at trial, a *Neuman* violation is harmless error where it is shown that the defendant was in fact aware of his/her right to testify and that the defendant was not coerced or misled into

22

giving up the right to testify.

203 W. Va. 561, 509 S.E.2d 842.

Finally, in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W. Va. 1980), and *Hundley v. Ashworth*, 181 W. Va. 379, 382 S.E.2d 573 (1989), this Court found that a preindictment delay of sufficient length was presumptively prejudicial to a defendant. However, in *State ex rel. Knotts v. Facemire*, 223 W. Va. 594, 678 S.E.2d 847 (2009), we revisited the presumptive prejudice of *Hey* and *Hundley* and found it to be legally unsound. Consequently, this Court held the following in Syllabus point 2 of *Facemire*:

> To maintain a claim that preindictment delay violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Article III, Section 10 of the West Virginia Constitution, the defendant must show actual prejudice. To the extent our prior decisions in *State ex rel. Leonard v. Hey*, 269 S.E.2d 394 (W. Va. 1980), *Hundley v. Ashworth*, 181 W. Va. 379, 382 S.E.2d 573 (1989), and their progeny are inconsistent with this holding, they are expressly overruled.

223 W. Va. 594, 678 S.E.2d 847.

In sum, we are on solid legal ground with our decision to revisit and overrule *Phillips*. Thus, if we had been persuaded by Mr. Sutherland that he removed a biased juror with a peremptory strike, this fact alone would not have resulted in a new trial.

**IV.**

**CONCLUSION**

23

The order convicting Mr. Sutherland of first degree murder and sentencing him to prison for life without mercy is affirmed.

Affirmed.