# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-0615** (Logan County 12-F-40)

**Delmar Shane Parsons,**
**Defendant Below, Petitioner**

**FILED**

**February 18, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Delmar Shane Parsons, by counsel Steven M. Thorne, appeals the May 30, 2013, Re-Sentencing Order entered following his conviction by a jury in the Circuit Court of Logan County of first degree robbery, conspiracy to commit robbery, and wanton endangerment. The State of West Virginia, by counsel Scott E. Johnson, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 15, 2011, at approximately 2:38 a.m., the Rich Oil gas station in Cora, Logan County, was robbed at gunpoint by two men wearing masks. The men took a total amount of $245.49 and drove away in a dark-colored 2008 Toyota Four-Runner that had been stolen several hours earlier from Ashley and Brian Garretson. Video surveillance evidence provided by a local business revealed that, not long after the robbery, at approximately 2:56 a.m., a 2002 white Chevrolet Cavalier, followed by a dark-colored SUV believed to be the Four-Runner, were driven to an area known as Coppers Fork Road, in the town of Holden. However, approximately twenty minutes later, only the Cavalier was seen being driven back down. Shortly thereafter, the Four-Runner was found burning on Coppers Fork Road.

Surveillance video obtained from a Walmart store showed that at approximately 3:35 a.m., the white Cavalier was driven into the store's parking lot by Robert Ernest, petitioner's co-defendant, with petitioner in the passenger seat. The video also showed both men entering the store and making a purchase.

Petitioner and Mr. Ernest were subsequently arrested[1] after Mr. Garretson (the owner of

---

[1]According to the trial testimony of Trooper James K. Harris of the West Virginia State Police, surveillance video of the gas station taken the day before the robbery showed petitioner and his co-defendant in and around the store at 11:48 a.m. and again at 2:24 p.m. Trooper Harris

1

the stolen Four-Runner) viewed the gas station surveillance video of the robbery and observed that one of the perpetrators was wearing Puma running shoes that were similar to a unique pair that he had previously given to Mr. Ernest.[2]  At trial, witness Shawn Watson testified that, approximately four weeks before the robbery, Mr. Ernest asked him if he would help him rob the gas station.[3]

For several months prior to the robbery, both petitioner and Mr. Ernest stayed off and on at the home of Janessa Dowdy, the owner of the aforementioned 2002 white Cavalier, and her fifteen-year-old daughter, Ashton.  Ashton Dowdy testified that when petitioner and Mr. Ernest returned to the Dowdy home following the robbery, petitioner "told me that he had robbed the Rich Station and had a gun to [an employee's] head.  And they took a car to Holden and burned it, an SUV."  Upon viewing still photographs from the robbery scene, Miss Dowdy further testified that the sweatshirt and jogging pants worn by one of the masked robbers were the sweatshirt and pants she loaned petitioner on the night of the robbery.  Petitioner testified at trial and denied any involvement in the robbery.[4]

Petitioner was convicted on the charges of first degree robbery, conspiracy, and wanton endangerment.[5]  He received a life sentence as a habitual offender[6] for the robbery conviction and was sentenced to one to five years of incarceration for conspiracy and five years for wanton endangerment.  All of the sentences were ordered to run consecutively.  Petitioner's post-trial motion for a new trial was denied.[7] This appeal followed.

Petitioner's first assignment of error is that the trial court abused its discretion by failing to strike a juror for cause.  During voir dire, potential juror Janet Rogers revealed that her

---

testified that he often collects video evidence up to twenty hours before a robbery has occurred because, based upon his experience, perpetrators routinely case the targeted location before committing the robbery.

[2]Mr. Garretson testified that Mr. Ernest had previously done some construction work for him at his home.

[3]At the time, Mr. Watson was employed at the gas station.  He testified that he declined to help Mr. Ernest and did not initially report Mr. Ernest's inquiry to police because he did not believe Mr. Ernest would go through with the robbery.

[4]Mr. Ernest did not testify at petitioner's trial.

[5]Petitioner was acquitted on burglary and petit larceny charges relating to guns stolen from the home of Roy Gene Vincell prior to the robbery at issue.

[6]Following a trial under the habitual criminal statute, the same jury found that petitioner was previously convicted of two prior felonies in Kentucky and Indiana.

[7]Petitioner also filed a pro se motion for reconsideration of sentence.  That motion was denied by order entered January 14, 2013.

daughter and Ashley Garrettson (the owner of the stolen Four-Runner) were best friends in junior and senior high school but that she had not had much contact with Ms. Garrettson since 1998. Ms. Rogers further stated that she was a member of a community crime watch group; that her son-in-law worked as a guard at a federal prison; and that her niece worked as a dispatcher for the West Virginia State Police. In response to questions from the prosecuting attorney regarding whether she could fairly weigh the evidence as presented, Ms. Rogers answered that she could. When asked by defense counsel whether she "could be fair not only to the State of West Virginia but to a person that is in this courtroom charged with numerous crimes[,]" Ms. Rogers replied "I believe that I could. . . . I mean I'm certain I could. I don't want to judge anybody wrongly." In response to defense counsel's question that "[i]f there is evidence there that didn't amount to beyond a reasonable doubt. Would it be difficult for you to acquit in that case?" Again, Ms. Rogers replied, "I don't think so. . . . I always hope to do the right thing, you know, with the evidence." Thereafter, the trial court asked Ms. Rogers whether she understood her duty to acquit if the State failed to prove its case beyond a reasonable doubt and, further, whether she was confident that she could follow the court's instructions and find petitioner not guilty if the State fails to prove its case. In response to all of these questions, Ms. Rogers answered in the affirmative.

Petitioner's subsequent motion to strike Ms. Rogers for cause was denied and petitioner used a peremptory strike to remove her from the jury panel. On appeal, petitioner argues that the trial court committed reversible error by failing to strike Ms. Rogers for cause. In support of his argument, petitioner contends that "[o]nce a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair." Syl. Pt. 2, *State v. Griffin*, 211 W.Va. 508, 566 S.E.2d 645 (2002) (quoting Syl. Pt. 5, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002)). Petitioner further argues that the relevant test for determining juror bias is whether the juror had a fixed opinion such that she could not be impartial. Syl. Pt. 4, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). "Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary." *Id.* Petitioner argues that Ms. Rogers demonstrated disqualifying prejudice given her answers to defense counsel's voir dire question. Moreover, she was surrounded by friends and family in law enforcement, was directly involved in a community crime watch, and personally knew the owner of the stolen SUV. Thus, petitioner argues, despite Ms. Rogers' claim that she could judge petitioner impartially, the trial court should have removed her as a juror and petitioner should not have been forced to use a preemptory strike. Petitioner contends he is entitled to a new trial.

In reviewing a trial court's decision not to strike a potential juror for cause, this Court has articulated the following standard:

"In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on

3

disqualification by the trial court." *State v. Miller*, 197 W.Va. 588, 600-01, 476 S.E.2d 535, 547-48 (1996).

*State v. Sutherland*, 231 W.Va. 410, __, 745 S.E.2d 448, 450 (2013).

In syllabus point three of *Sutherland*, 231 W.Va. at __, 745 S.E.2d at 449, this Court further held as follows:

> A trial court's failure to remove a biased juror from a jury panel, as required by W.Va. Code § 62-3-3 (1949) (Repl. Vol. 2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

*See*, 231 W.Va. at __, 745 S.E.2d at 458 (recognizing that "when a defendant has been tried before an unbiased jury, he or she has received exactly what the constitution guarantees. Consequently, a defendant should be required to show prejudice resulting from the selection of an unbiased juror. To hold otherwise results in an unjustifiable waste of judicial time and resources.") In the present appeal, petitioner in no way challenges the qualifications of any of the jurors who actually sat on his jury nor does he argue that his jury was not impartial. Simply put, petitioner fails to show prejudice. Therefore, we find no error in the trial court's decision not to remove Ms. Rogers from the jury panel for cause.

Petitioner's second and final assignment of error is that the evidence at trial was insufficient to support his convictions. In support of this argument, petitioner contends that the witness testimony was inconsistent and often conflicted, thereby calling into question the witnesses' credibility. More specifically, petitioner argues that former gas station employee Shawn Watson's testimony that Mr. Ernest (petitioner's co-defendant) had previously approached him about robbing the gas station conflicted with Mr. Ernest's statement to police that it was Mr. Watson who approached him about committing the robbery. Likewise, Mr. Garretson's testimony that he believed Mr. Ernest stole his SUV conflicted with Mr. Ernest's statement that Mr. Garretson had previously asked him to steal the SUV because Mr. Garretson's wife was about to divorce him. Given that Mr. Ernest's statements are not a part of the appellate record, petitioner's argument that his statements conflict with those of other witnesses are without merit. Petitioner further argues that Ashton Dowdy's testimony incriminating petitioner in the crimes conflicted with a letter she subsequently wrote to him while he was incarcerated in which she stated that "I know you'll be home soon because I know you didn't have nothing to [do] with it." For his part, petitioner denied any involvement in the robbery, testifying that he had a toothache that night and went to Walmart to purchase medication while wearing Ashton Dowdy's sweatshirt. He further denied that he had any conversation with Miss Dowdy about robbing the gas station. Thus, petitioner argues that "[w]hen two inferences, equally plausible, may be drawn from evidence, the law does not permit the jury to adopt the one more unfavorable to the accused. . . ." Syl. Pt. 3, *State v. Maley*, 151 W.Va. 593, 153 S.E.2d 827 (1967) (citation omitted). He argues that the evidence should have been construed in his favor and that, further,

the evidence was not sufficient to convict him of the crimes charged.[8]

In syllabus points one and three of *State v. Guthrie*, 194 W.Va. 657, 663, 461 S.E.2d 163, 169 (1995), this Court established the following standards for reviewing claims of insufficiency of the evidence:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Furthermore, with regard to petitioner's contention that certain witnesses were not credible, we observe that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. . . . It is for the jury to decide which witnesses to believe or disbelieve." *Id.* at 669 n.9, 461 S.E.2d at 175 n.9. *See State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996) (stating that when reviewing sufficiency of evidence, "the viewer must accept all reasonable inferences from it that are consistent with the verdict. . . .[and] as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.").

---

[8]Additionally, petitioner argues that testimony from witness Michael "Mickey" White, the principal of Holden Central Elementary School, was not credible. Mr. White testified regarding the accuracy of the time of day noted on still photographs derived from the school's video surveillance camera, which was located along the highway upon which the Cavalier and SUV were driven. Petitioner argues that Mr. White testified that one of the photographs of the above-described vehicles passed by the school at 3:03:25 a.m., but that he also testified that the video cameras are inaccurate all of the time. Based upon this Court's review of the transcript of Mr. White's trial testimony, and contrary to petitioner's argument in this regard, it is not at all clear that the photographs about which Mr. White testified included images of the vehicles at issue.

5

Upon our review of the evidence in the light most favorable to the prosecution, we conclude that the evidence was more than sufficient to sustain petitioner's convictions. Former gas station employee Shawn Watson testified that petitioner's co-defendant, Mr. Ernest, had asked him several weeks earlier if Mr. Watson would help him rob the gas station. Surveillance video from the gas station taken the day before the robbery showed petitioner and Mr. Ernest casing the location. After the robbery, the perpetrators drove away in an SUV stolen from Ashley and Brian Garretson, in whose home Mr. Ernest had previously worked. Upon viewing video footage of the robbery, Mr. Garretson observed one of the perpetrators wearing running shoes similar to a pair he had previously given Mr. Ernest. Shortly after the robbery, the white Cavalier owned by Janessa Dowdy (in whose home the two men were staying) and the stolen SUV were seen on surveillance video being driven to Coppers Fork Road. The stolen SUV was then found burning at that location. Finally, Ashton Dowdy testified that petitioner admitted to her that he robbed the gas station; that he held a gun to the cashier's head; and that the men burned the SUV. In consideration of all of the above, this Court concludes that the jury had sufficient evidence to convict petitioner of first degree robbery, conspiracy to commit robbery, and wanton endangerment.[9]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 18, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[9]Petitioner also briefly argues that his sentence as a habitual offender was invalid because there was insufficient evidence to convict him on the first degree robbery conviction. Given this Court's holding that the evidence was, indeed, sufficient to convict petitioner of this offense, we need not address his contention that his sentence as a habitual offender was invalid.

6