# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs) **No. 15-1039** (Ohio County 13-F-22)

**William T. Redman III,**
**Defendant Below, Petitioner**

**FILED**

**February 21, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner William T. Redman III, by counsel Justin M. Hershberger, appeals the Circuit Court of Ohio County's September 22, 2015, order sentencing him to a cumulative prison term of thirty-six to eighty years following his conviction of four felony sex crimes. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. On appeal, petitioner argues that (1) the circuit court erred in denying his motion to dismiss the charges related to "penetration"; (2) the circuit court erred in denying his motion to strike a prospective juror for cause; (3) the circuit court erred in denying his motion for judgment of acquittal; and (4) insufficient evidence to support the verdict.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the summer of 2005, petitioner lived with his girlfriend and her children, one of whom was ten-year-old M.E. ("child"). Due to an allegation that petitioner offered the child money to watch him masturbate, the child was interviewed at a child advocacy center. During the interview, the child stated that petitioner offered her money to watch him masturbate, but she declined his offer and he left the room. She stated that nothing else happened with petitioner in her current home. However, the child went on to reveal that when she lived in Proctor in Wetzel County, West Virginia, petitioner had previously touched her "private part" with his hands inside her underwear "[a] good many" times. No charges were brought against petitioner at that time.[1]

---

[1]The parties slightly disagree as to why there was a lengthy delay in this case. The State says that the case "went cold" after the child's 2005 interview. Petitioner, on the other hand, says that the State chose not to pursue charges in 2005 because the child's interview failed to show any chargeable offense committed in Ohio County, West Virginia.

1

In 2011, the child (then approximately sixteen years of age) was appointed a guardian ad litem ("guardian") in an unrelated proceeding. The child told her guardian about her 2005 allegations against petitioner. The guardian then contacted law enforcement, and a new investigation ensued. In February of 2011, Sgt. M. Adams of the West Virginia State Police met with the guardian and then conducted an interview with the child. Sgt. Adams and the guardian were present for the interview. During the interview, the child stated that she and her family moved to Ohio County about seven years before in approximately 2004. Petitioner moved into their home in Ohio County shortly thereafter. Although the details of their relationship are somewhat unclear, petitioner was the mother's boyfriend when he resided with them. The child explained that, at the time petitioner moved into their home, he was in his "[l]ate 40's[,]" and she was four years old.

In the 2011 interview, the child said that when petitioner moved into their home he began regularly sexually abusing her. She claimed that he hid in her closet apparently waiting for her; that he smelled her underwear drawer; that he stood over her bed while she was asleep; that he touched her genitalia more than once per week for years; that he touched her breasts once when she was ten; that he forced her to touch his penis; that he once pulled her into a forced hug and began kissing her neck; that he would "often masturbate in front of [her]" when she walked into a room where he was alone but she would just walk out again; and that he had asked her to watch him masturbate once. She denied ever having sexual intercourse of any kind with him. When asked whether petitioner ever, you know, go inside of your vagina with his hand," the child responded, "[n]ot that I can recall." She again confirmed that he placed his hands under her clothes and on her skin, but when asked "never inside" she responded, "[n]o."

In January of 2013, the Grand Jury of Ohio County returned an indictment against petitioner charging him with the following six felonies between August 1, 2005, and July 20, 2006: two counts of first-degree sexual assault (Counts 1 and 3); three counts of sexual abuse by a custodian (Counts 2, 4, and 6); and one count of first-degree sexual abuse (Count 5). Four of the six counts (Counts 1, 2, 3, and 4) contain allegations of sexual penetration. Sgt. Adams was the sole witness testifying before the grand jury. In the grand jury proceedings, regarding the allegations of sexual penetration, the assistant prosecuting attorney had the following exchange with Sgt. Adams:

> [Assistant prosecutor] Q: Through the course of your investigation, did you determine that sometime between August 1, 2005[,] and July 20th, 2006, . . . [in] Ohio County, West Virginia, . . . that [petitioner] had assaulted [the child] by penetrating her sexual organ with his finger?
>
> [Sgt Adams] A: Yes, ma'am.
>
> Q: And did this – is this the basis for Count 1 of sexual assault in the First Degree contained in the Indictment?
>
> A: Yes, ma'am.

2

Q: In addition, did you also determine that this happened, [sic] more than once, and a separate incident is, [sic] of this same act of [petitioner] penetrating the sexual organ of [the child] . . . is that the basis for Count 3 of the Indictment of sexual assault in the First Degree?

A: Yes, ma'am, that's right.

Sgt. Adams further testified that the two alleged incidents of digital penetration that supported the counts for first-degree sexual assault (Counts 1 and 3) also provided the basis for the two counts of sexual abuse by a custodian (Counts 2 and 4).

In October of 2014, petitioner filed a "Motion for Appropriate Relief." In his motion, petitioner argued that Sgt. Adams' testimony about digital penetration during the grand jury proceedings was "inconsistent with and contradicted by" the evidence, particularly the child's complete denial in her interviews of any penetration. Petitioner further asserted that the assistant prosecutor's leading questions about digital penetration were "unsupported by any factual basis[.]" Based on these claims, petitioner requested that the circuit court order the State to produce additional discovery regarding certain written documentation and any evidence of digital penetration. In its response to the motion, the State argued that it had fully complied with the requirements to provide petitioner with discovery and that the circuit court should deny the motion. The State argued that petitioner's claims could be made in a motion for a "directed verdict[.]"

In November of 2014, petitioner filed a motion to quash Counts 1 through 4 of the indictment based on prosecutorial misconduct and denial of due process. In that motion, petitioner argued that the indictment was procured by "conclusory questioning with no facts being related to the grand jury, but also with the full knowledge the accuser specifically denied any penetration."

On December 8, 2014, the circuit court held a hearing on petitioner's bond and outstanding pre-trial motions. Following argument on petitioner's outstanding motions, the circuit court took the matter under advisement. By order entered on December 22, 2014, the circuit court denied petitioner's motions for appropriate relief and to quash Counts 1 through 4 of the indictment. In that order, the circuit court found that petitioner failed to prove intentional, willful fraud on the part of the State during the grand jury proceeding, and, absent such fraud, courts are prohibited from assessing and reviewing the grand jury's consideration of evidence in returning an indictment. The circuit court noted that at the December 8, 2014, hearing, petitioner's counsel clearly indicated "that he did not believe the prosecutor's actions were fraudulent." The circuit court further stated that it could not find that Sgt. Adams' testimony was "misleading" because he testified only to his "determination . . . based on his investigation."

In June of 2015, petitioner filed a second "Motion for Appropriate Relief." In the motion, petitioner moved the circuit court to (1) find that no probable cause existed to support the assistant prosecutor's questions and Sgt. Adams' answers about digital penetration during the grand jury proceeding, and (2) dismiss the indictment.

3

On July 24, 2015, the State responded to petitioner's second "Motion for Appropriate Relief" by arguing that the issues raised had previously been addressed in the circuit court's December 22, 2014, order. As such, the State requested that the circuit court deny petitioner's motion. Subsequently, the circuit court denied petitioner's second "Motion for Appropriate Relief."

In late July of 2015, petitioner's jury trial commenced. During individual jury voir dire, many prospective jurors were excused from the jury panel due to their comments and/or disclosures, including three prospective jurors who indicated that they had been the victims of sexual abuse. Additionally, the circuit court granted four of petitioner's motions to strike prospective jurors for cause, including the wife of a United States attorney; a victim of sexual abuse who questioned her impartiality; and a woman who questioned her impartiality due to her sister's experience with sexual assault.

The final juror individually questioned by the parties and circuit court was a prospective juror who revealed that she was the victim of sexual abuse by a family member when she was a child. When questioned on her impartiality, the prospective juror stated that she could remain impartial in light of her experience. She explained that "I've healed from that. . . . I've healed from that completely . . . I've forgiven that person and everything, so I don't feel like that my judgment would be impaired." She also expressed her belief that petitioner was "innocent until you [addressing the assistant prosecutor] prove him guilty." Petitioner moved to strike the prospective juror for cause. In denying the motion, the circuit court found that "there's nothing she said that rises to the level of cause. . . . I would have to speculate that she's lying or not being completely honest in answering her questions. Her answers were all appropriate to the questions posed insofar as her ability to serve as a juror goes." Ultimately, petitioner exercised a peremptory strike to remove the prospective juror from the jury panel. Therefore, the prospective juror did not sit on the final jury that decided the outcome of this case.

In its case-in-chief, the State presented several witnesses, including Sgt. Adams, the child, and the child's mother. Sgt. Adams testified that his investigation included collecting and reviewing medical documents, materials from a Child Protective Services file, the child's 2005 interview, and interviewing the child and petitioner. Sgt Adams testified that petitioner resided in the child's home in 2005 but had access to the child as late as the summer of 2006. He stated that the child was ten to eleven years old at that time. He recounted the allegations made by the child that in late 2005 to 2006 petitioner began kissing her neck and rubbing her genitalia under her underwear. Although Sgt. Adams further recounted the child's statement that sexual abuse occurred as often as once per week. Sgt. Adams also noted the child's accusation in 2005 and again in 2011 that petitioner offered her money to watch him masturbate.

The child's mother testified that she and petitioner met while working at a telemarketing center, and they developed a relationship in the mid-2000s. She testified that, in July or August of 2005, petitioner resided at her house in Ohio County with her children for long periods. The child's mother explained that when the allegations against him surfaced in 2005, she confronted him, but he denied the accusations. Despite being told to leave the home, she explained that he would occasionally arrive at her home unannounced and even let himself into the home. The

child's mother stated that, to her knowledge, petitioner had no contact with the child after December of 2005, and she admitted that she did not personally witness any abuse.

The child testified that when petitioner lived in her home they would often be home together while her mother was absent. The child told the jury that petitioner began showing a "weird" interest in her puberty and body. She said that she would find petitioner smelling her underwear, and she recounted the claim that he offered her $5 to watch him masturbate. She claimed that she once awoke to find petitioner standing over her "with his pants and underwear down." She further testified that he once pulled her into a hug and began rubbing her. She tried to back away, but "he kept rubbing [her]." During this incident, which she said occurred after her 2005 interview, he kissed her neck, told her to imagine that he was a boy she had a "crush" on, and pushed his hands under her underwear where he rubbed her genitalia. According to the child's testimony, petitioner was "not going up inside of me, but he was rubbing along, like, the lips of the area and—and down like into that area." At that point in her testimony, the child requested a short recess to regain her composure.

Following the recess, she gave more detail of the incident. She testified that petitioner used his hand and fingers to touch her genitalia for approximately five minutes. The child stated "[i]t was just kind of – kind of rubbing up and down along the entire area, in and out of the lips. . . . going on top and then into that area and back and forth and up and down. . . . on the inside area of the lips, like the surrounding area[.]" She also testified that he touched her breasts once while making dinner and commented about how she was "growing up." The child also testified that she did not disclose everything that had occurred in her 2005 interview because she "just wanted to get out of there." She further indicated that her trial testimony was the truth.

During petitioner's cross-examination of the child, he asked about her previous statements that petitioner never penetrated her genitalia. He specifically asked her whether she understood "what was inside and what was outside?" She responded that "I took inside to mean up inside[.]" She elaborated that "I was under a different impression about what the word penetration meant." The child also clarified that petitioner only touched her genitalia on one occasion, which was after her interview on December 21, 2005, and before January 1, 2006. She stated that she could not recall the exact date.

At the conclusion of the State's case-in-chief, petitioner moved for judgment of acquittal on three grounds. First, petitioner argued that the indictment was based on two incidents of penetration, but the child testified that petitioner only touched her genitalia once. For that reason, petitioner moved for judgment of acquittal of one count of first-degree sexual assault and one count of sexual abuse by a custodian. The State agreed with petitioner's first argument, and the circuit court dismissed Counts 3 (first-degree sexual assault) and 4 (sexual abuse by a custodian). Second, petitioner argued that the evidence was insufficient to prove any penetration beyond a reasonable doubt, which he claimed undermined Counts 1 and 2. The State responded that the child sufficiently described one act of penetration "of the labia or external lips of the vulva." The circuit court found that the child's use of the word "into" was sufficient to allow the jury to decide the merits of the remaining counts requiring penetration. Petitioner's third claim for judgment of acquittal was that the State failed to prove that petitioner was above the age of fourteen, which is an element of first-degree sexual assault and first-degree sexual abuse.

Although petitioner called no witnesses, he and the State agreed to the admission of certain medical records showing that he was hospitalized for a period of time in December of 2005 and January of 2006. He renewed his motion for judgment of acquittal based on the same grounds previously raised, and the circuit court again denied that motion. In petitioner's closing argument, he stated that the child gave conflicting stories in 2005, 2011, and at trial in 2015, about her encounters with him. Following its deliberations, the jury convicted petitioner of all four remaining counts—one count of first-degree sexual assault (Count 1); two counts of sexual abuse by a custodian (Counts 2 and 6); and one count of first-degree sexual abuse (Count 5).

On September 22, 2015, the circuit court entered a final order denying petitioner's motion for judgment of acquittal. By the same order, the circuit court sentenced him to a cumulative prison term of thirty-six to eighty years. This appeal followed.

We have previously held as follows:

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 1, *State v. Blevins*, 231 W.Va. 135, 744 S.E.2d 245 (2013). Additional standards of review will be discussed where necessary below.

On appeal, petitioner first argues that the circuit court erred in denying his pre-trial motion to dismiss the charges in the indictment related to "penetration." Petitioner contends that the assistant prosecutor and Sgt. Adams presented misleading testimony to the grand jury regarding penetration. Under petitioner's argument, the child denied penetration in her 2005 and 2011 interviews, and, therefore, the questions and answers by the assistant prosecutor and Sgt. Adams, respectively, had no basis in fact.

Regarding our review of a motion to dismiss an indictment, we have held as follows:

> This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). We have also established the following test for reviewing a ruling on the dismissal of an indictment:

6

"Dismissal of [an] indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." *Bank of Nova Scotia v. United Stat*es, 487 U.S. 250, 261-62, 108 S.Ct. 2369, 2377, 101 L.Ed.2d 228, 238 (1988) (citing *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 945, 89 L.Ed.2d 50 (1986) (O'Conner, J., concurring)).

Syl. Pt. 6, *State ex rel. Pinson v. Maynard*, 181 W.Va. 662, 383 S.E.2d 844 (1989). Further, "[e]xcept for willful, intentional fraud[,] the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl., *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977). We have also explained that generally "a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." Syl. Pt. 12, in part, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782, 786 (1984).

In this case, petitioner alleges that the evidence of penetration presented to the grand jury was misleading. As noted by the circuit court, petitioner did not allege, nor establish by evidence, that the assistant prosecutor and/or Sgt. Adams committed willful, intentional fraud during the grand jury proceedings. We agree with the circuit court that no willful, intentional fraud was alleged or proven.

With regard to petitioner's contention that Sgt. Adams' testimony was misleading, we disagree. Before the grand jury, Sgt. Adams was asked by the assistant prosecutor whether he had determined, based on his investigation, that penetration had occurred. Sgt. Adams testified that he had made that determination. Notably, Sgt. Adams did not indicate in any way that the child stated that penetration occurred. Based on petitioner's argument and the record before us, we do not find that Sgt. Adams provided misleading testimony about his determination to the grand jury, and we decline to inquire into the evidence before the grand jury further given the lack of willful, intentional fraud. As such, we find no reversible error in petitioner's first ground for appeal.

Next, petitioner asserts that the circuit court erred in denying his motion to strike for cause the prospective juror who was the victim of sexual abuse by a family member when she was a child. Petitioner claims that his motion should have been granted because (1) the prospective juror made a statement that she was unsure if she could remain impartial, and (2) her disclosure that she was the victim of sexual abuse as a child rendered her biased against petitioner. The State asserts that (1) petitioner is factually wrong about the prospective jury statement regarding her impartiality because she never made a statement that called her impartiality into question, and (2) the prospective juror did not sit on the final jury because she was dismissed by peremptory strike with no demonstrable prejudice to petitioner.

With regard to our review of juror qualifications, we follow a three-step standard of review:

Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court. *State v. Miller*, 197 W.Va. 588, 600-01, 476 S.E.2d 535, 547-48 (1996).

*State v. Sutherland*, 231 W.Va. 410, 412, 745 S.E.2d 448, 450 (2013). We have also held that

[a] trial court's failure to remove a biased juror from a jury panel, as required by W.Va. Code § 62-3-3 (1949) (Repl.Vol.2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

*Sutherland*, 231 W.Va. at 411, 745 S.E.2d at 449, syl. pt. 3. Further, "*Sutherland* makes clear that unless a criminal defendant shows prejudice, a trial court does not commit reversible error when it fails to strike a juror for cause where a party uses a peremptory strike to eliminate the offending juror from the jury panel." *State v. Rollins*, 233 W.Va. 715, 729, 760 S.E.2d 529, 543 (2014).

Following our review of the record on appeal, we agree with the State that (1) the prospective juror did not make a statement that she questioned her impartiality,[2] and (2) the prospective juror was dismissed from the jury panel by peremptory strike with no prejudice to petitioner. It is undisputed that the prospective juror did not sit on petitioner's jury because she was removed by peremptory strike. While petitioner acknowledges that fact, he argues that *Sutherland*'s prejudice element is met in this case because other jurors "gave [him] pause." However, petitioner admits that his concerns about the other jurors did "not rise to the level of being able to remove those jurors for cause." Under the facts of this case, we do not find that petitioner's concerns that other jurors seated on the jury gave him pause rise to the level of established prejudice.

Moreover, we do not find that the circuit court erred in ruling that the prospective juror was unbiased. During voir dire, the prospective juror stated that she could remain fair and that her experience with sexual abuse would not affect her judgment. She also unequivocally stated her belief that petitioner was innocent until proven guilty. Therefore, the prospective juror's statements do no support a finding of bias.

---

[2]In support of his factual claim, petitioner cites portions of the jury voir dire wherein two prospective jurors made statements that they questioned their impartiality. However, contrary to petitioner's assertion, neither of those prospective jurors were the prospective juror at issue on appeal who was sexually abused as a child.

8

Petitioner's third assignment of error is that the circuit court erred in denying his motion for judgment of acquittal at the close of the State's case-in-chief and his renewed motion at the close of evidence. Petitioner claims that his motion should have been granted because (1) there was no evidence of penetration; (2) the State failed to prove petitioner's age; and (3) the evidence did not support the State's timeframe for the crimes.[3] We have long held that

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our de novo review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996).

As to petitioner's claims regarding a lack of evidence of penetration or his age, we find no error. The circuit court properly considered the child's testimony that petitioner's hands went "into" her vaginal area. While the child gave conflicting statements on this point, she provided an explanation about those inconsistencies and told the jury that her trial testimony was the truth. We cannot, and will not, assess her credibility on a cold record. Petitioner presented those concerns to the jury, and it found the child's trial testimony to be credible.

As to petitioner's age, the statutes for first-degree sexual assault and first-degree sexual abuse require a criminal defendant to be more than fourteen years old. We have held that "[t]he exact age of the defendant is not an essential element of the crime of . . . sexual assault." *State v. Richey*, 171 W.Va. 342, 298 S.E.2d 879 (1982) (evaluating claim that State failed to prove defendant's exact age for third-degree sexual assault under West Virginia Code § 61-8B-5). We further held in *Richey* that "[w]here the exact age is not required to be proved, the defendant's physical appearance may be considered by the jury in determining age but there must be some additional evidence suggesting the defendant's age." 171 W.Va. at 345, 298 S.E.2d at 882, syl. pt. 6. Although petitioner's exact age was not established during the State's case-in-chief, we find no error in the circuit court's analysis that the jury could infer that he was older than

---

[3]We note that petitioner did not argue in his motions below that the evidence failed to support the State's timeframe for the crimes. Petitioner states without citation to the record that his motions for judgment of acquittal were based, in part, on "inconsistent testimony regarding whether [he] had any contact with [the child] between December 21, 2005, and January 1, 2006" and "medical records of the Petitioner showing him to be an inpatient in a local hospital from December 22, 2005, through January 3, 2006." The record on appeal does not support these factual assertions. Petitioner's initial motion was based on three grounds: (1) that the victim testified that only one instance of penetration occurred, not two; (2) that the evidence did not support any finding of penetration; and (3) that the State failed to prove petitioner's age. Thereafter, petitioner's renewed motion was based on, in his counsel's words, "the reasons stated at the conclusion of the State's case." Therefore, we find that petitioner failed to raise the timeframes of the State's case as an issue in his motions for judgment of acquittal. As such, we need not address that contention raised for the first time on appeal.

fourteen at all relevant times from his appearance and the circumstances under which he developed a relationship with the child's mother. Notably, petitioner was said to have worked with the child's mother at a telemarketing agency when they met prior to the abuse/assault. Consequently, we find no merit to petitioner's third assignment of error.

Petitioner's final claim on appeal is that the evidence was insufficient to support the jury's verdict. As to challenges to the sufficiency of the evidence, this Court has explained that

> "[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 3, *State v. Horn*, 232 W.Va. 32, 750 S.E.2d 248 (2013). We also held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, syl. pt. 3, in part.

Petitioner relies heavily on the argument that the child's statements in 2005, 2011, and at trial in 2015 provide inconsistent accounts of sexual abuse/assault. However, it is undisputed that petitioner was permitted to cross-examine the child on this point. In addition to attempting to explain any inconsistencies in her statements, the child testified that her account presented at trial was the truth. We have long held that "finders of fact[ ] have the responsibility of weighing the evidence and the credibility of the witnesses and resolving these inconsistencies . . . ." *State v. Houston*, 197 W.Va. 215, 230, 475 S.E.2d 307, 322 (1996) (citing *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995)). We have also explained that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Moreover, petitioner argued this point during his closing argument. Based on our review of this issue, we find that the jury was presented with petitioner's claims regarding the child's inconsistencies but found her trial testimony to be credible. When viewed in the light most

favorable to the State, the child's trial testimony was sufficient to support the jury's verdict. As such, we find that petitioner has failed to satisfy his burden on appeal that the evidence was insufficient.

For the foregoing reasons, the circuit court's September 22, 2015, sentencing order is hereby affirmed.

Affirmed.

**ISSUED:** February 21, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker