**FILED**
**November 26, 2024**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 22-0096** (Barbour County No. 19-F-55)

**Randall Lewis Utt,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Randall Lewis Utt appeals the final sentencing order of the Circuit Court of Barbour County entered on January 4, 2022, following his convictions for kidnapping, wanton endangerment involving a firearm, and use or presentment of a firearm during the commission of a felony.[1] The petitioner claims he was denied an impartial jury based on public remarks of a potential sworn juror who was struck for cause. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner was accused of kidnapping, restraining with electrical tape, and sexually assaulting a victim at gunpoint. He was indicted on one count of kidnapping, three counts of sexual assault in the first degree, one count of wanton endangerment involving a firearm, and four counts of use or presentment of a firearm during the commission of a felony. Relevant to this appeal, voir dire for the jury began on September 15, 2020. During this process, juror E.W. was called by the circuit court after another potential juror was excused. The following exchange then occurred:

> THE COURT: . . . [E.W.], as you come up here, do you have any reason based on the Court's questions from before to feel that you would be biased one way or the other in this case?
> E.W.: Yeah, I do.
> THE COURT: Why?
> E.W.: Because I don't believe in this. I believe if somebody is saying that they're convicted – I mean, saying that a sexual thing against them, I believe that they are guilty.

---

[1] The petitioner is represented by counsel Gary A. Collias. The State is represented by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper. We use initials where necessary to protect the potential juror's privacy. W. Va. R. App. Proc. 40(e).

THE COURT: Regardless of what – I mean, just because somebody said that?
E.W.: No, I just heard it.
THE COURT: What do you mean you just heard it?
E.W.: I just heard people talking.
THE COURT: About this case?
E.W.: Yeah.
THE COURT: Who?
E.W.: Just people around town.
THE COURT: What people?
E.W.: I don't know their names. I don't.
THE COURT: Why wouldn't you know their names? Why would this ever come up?
E.W.: Because we was just – we was just talking.
THE COURT: Who?
E.W.: Because when I was little something almost happened to me.
THE COURT: Okay. How old are you [E.W.]?
E.W.: I'm 64 years old.
THE COURT: All right. But you don't know who was saying something about this case?
E.W. No. We was talking about it down in town. I was just telling somebody something, we were just talking and when I was – like I said, when I was little it almost happened to me.
THE COURT: [E.W.] won't you come up here.

The circuit court then continued its discussion with E.W. at the bench, and she advised that "[a]ll I know is people was talking around town, sorry. People was talking around town about him and the guns and things and about sexually abusing everything else." She could not recall any specific details, including the names of people with whom she claimed to have a discussion. E.W. stated she did not know if she could be impartial, and she was excused. The court found "that [E.W.'s] testimony is incredible, that she is not believable, doesn't want to set [sic] on the jury, has made up a story to have that happen. She would not be appropriate to sit on the jury for those reasons." The petitioner's counsel expressed concern that E.W.'s remarks tainted the jury. The court construed that as an objection and overruled it, reiterating that her remarks were not believable. At the end of jury selection, the court asked if there were any objections to qualifying the jury panel, and the petitioner's counsel noted his previous objection. The State responded that the "short outburst" was not something that would taint the whole jury and was insufficient to support not qualifying the jury. The court agreed and again noted that it "seemed to be obviously [sic] from the get go that it probably patently wasn't true." The petitioner's counsel noted that "a curative instruction might do more harm than good," and the court agreed. Following E.W.'s dismissal, voir dire continued. The petitioner's counsel asked multiple questions that probed the potential jurors' thoughts about the "me too" movement, the State's burden of proof, and the petitioner's right to a presumption of innocence. After jury selection was complete, the court instructed the empaneled jury to only consider the evidence presented at trial, that the petitioner was presumed innocent, and that the burden of proof was on the State to prove guilt beyond a reasonable doubt.

At the conclusion of the trial, the jury convicted the petitioner of one count of kidnapping, one count of wanton endangerment involving a firearm, and one count of use or presentment of a firearm during the commission of a felony. The jury acquitted the petitioner of the remaining charges, including those related to the alleged sexual assault of the victim. The petitioner filed a motion for judgment of acquittal or, in the alternative, for a new trial and argued, among other things, that E.W.'s "outburst" in front of the prospective jurors denied his right to a fair trial by an impartial jury. The petitioner described the "outburst" as emotional, involving screaming and crying. The circuit court denied the motion, finding that the petitioner's description of an "outburst" was a mischaracterization, E.W. was not inflamed or shouting, and there was no indication that the jurors were affected by E.W.'s remarks. The court further noted that the jury acquitted the petitioner on several charges, including all the sexual offenses, which indicated that they followed their oaths to be impartial, listened to the court's instructions, and were not compromised by E.W.'s statements.

The circuit court sentenced the petitioner to life imprisonment with mercy on his conviction of one count of kidnapping. For his conviction of one count of wanton endangerment involving a firearm, the court sentenced the petitioner to a term of five years of imprisonment, and for his conviction of one count of use or presentment of a firearm during the commission of a felony, the court sentenced him to a term of ten years of imprisonment, to run concurrently with each other and consecutively to his sentence for kidnapping. The petitioner now appeals.

Before this Court, the petitioner argues that the circuit court erred when it overruled his objection and denied his motion for a new trial because the jury heard disqualifying remarks from a prospective juror that tainted the entire jury pool and resulted in a denial of his right to trial by a fair and impartial jury.

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

Syl. Pt. 5, *State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679 (2019). In addition,

> "[w]hen considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror." Syllabus Point 3, *O'Dell v. Miller*, 211 W. Va. 285, 565 S.E.2d 407 (2002).

Syl. Pt. 5, *State v. Newcomb*, 223 W. Va. 843, 679 S.E.2d 675 (2009). The circuit court has "broad discretion in determining whether to strike jurors for cause and we will reverse only where actual

prejudice is demonstrated." *Benny W.*, 242 W. Va. at 628, 837 S.E.2d at 689 (quoting *State v. Miller*, 197 W. Va. 588, 605, 476 S.E.2d 535, 552 (1996)).

Here, no one disputes that E.W. was properly excused by the circuit court and did not participate in deliberations. Although the petitioner contends that E.W.'s remarks were prejudicial because the rest of the jury pool heard that people around town were talking about his case and everyone thought he was guilty and that tainted the entire jury pool, the petitioner did not request individual voir dire about these comments, despite having the opportunity to do so.[2] "[W]here a defendant does not seek additional voir dire to demonstrate possible bias, prejudice, or disqualification, there can be no error for the failure to strike prospective jurors for cause." *State v. Miller*, 197 W. Va. 588, 603, 476 S.E.2d 535, 550 (1996); *see also Benny W.*, 242 W. Va. at 629, 837 S.E.2d at 690 (recognizing that "[a] party can not establish facts in a case by asserting them in a brief. Those are nothing more than an attorney's statements, which are not evidence." (quoting *City of Helena v. Whittinghill*, 219 P.3d 1244, 124 (Mont. 2009))). To the extent the petitioner claims error or abuse of discretion based on a lack of individual voir dire related to E.W.'s remarks, it was incumbent on him to request that voir dire or ask the questions himself. *See Miller*, 197 W. Va. at 603, 476 S.E.2d at 550 (noting that it is "difficult to perceive" how the right to adequate voir dire is denied when the defendant has the opportunity to ask or request additional or supplementary voir dire questions and fails do so).

Here, the petitioner did ask related questions to the remainder of the jury pool about the "me too" movement, which, he claimed, was premised on believing accusers and "effectively requir[ing] the accused to prove their innocence." No juror identified prejudice or bias on that basis. In addition, the remaining voir dire gave many opportunities for individuals to identify potential concerns for related bias or prejudice. When concerns were raised, the circuit court conducted individual voir dire and, when warranted, excused other potential jurors. Although a specific curative instruction was discussed, the petitioner stated that it "might do more harm than good." Regardless, the court's instructions regarding the empaneled jurors' oath of impartiality, the State's burden to prove its case beyond a reasonable doubt, and similar instructions also indicate that the jury was adequately instructed to avoid prejudice in these circumstances. Finally, the jury acquitted the petitioner of the charges related to sexual assault, the counts that E.W.'s remarks arguably had the most potential to influence, and the petitioner admits that there was sufficient evidence to support the jury's verdict. Therefore, it does not appear that there was actual prejudice to the petitioner. Accordingly, given the totality of these circumstances, we cannot conclude that the circuit court abused its discretion in overruling the petitioner's objection and proceeding with the remaining jury pool after E.W.'s remarks. *See generally* Syl. Pt. 7, *State v. Phillips*, 194 W. Va. 569, 461 S.E.2d 75 (1995) ("A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed

---

[2] We have generally discussed similar types of issues in the context of a request for a change of venue based on similar allegations of negative community sentiment. In those analogous cases, we have explained that the relevant inquiry is not whether "the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." Syl. Pt. 3, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice."), *overruled in part by* Syl. Pt. 3, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013); *State v. McKean*, No. 14-0437, 2015 WL 1881021, at *3 (W. Va. Apr. 23, 2015) (memorandum decision) (discussing *Miller* and other cases and finding no abuse of discretion in the denial of a motion to dismiss the jury pool based on an improper comment); *Nenigar v. Ballard*, No. 13-0385, 2013 WL 6153154 at *12-*13 (W. Va. Nov. 22, 2013) (memorandum decision) (affirming and adopting the circuit court's conclusion that a statement from one juror related to knowing the petitioner "from a previous placement he was in" did not result in prejudice or bias against him that required a mistrial and a new jury pool because no special attention was brought to the statement, there was no elaboration on the meaning of "placement," the juror did not sit on the convicting jury, and further voir dire was conducted after that comment and no jurors stated they were influenced by the statement).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 26, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

5